IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   1:16-CR- 200 (GLS) |
| | ) | |
| v. | ) | **Information** |
| | ) | |
| **SAMUEL BAIN ,** | ) | Violation:   18 U.S.C. §§ 1349 & 2326 |
| | ) |           [Conspiracy] |
| | ) | |
| | ) | |
| | ) | 1 Count |
| | ) | |
| **Defendant.** | ) | County of Offense:   Saratoga |

## THE UNITED STATES ATTORNEY CHARGES:

### Introduction

1.      The defendant SAMUEL BAIN, along with several coconspirators, devised and executed an unlawful scheme to defraud hundreds of financially distressed homeowners by identifying people who were having difficulty paying their mortgages (hereinafter, the "victims") and offered – for a fee – to help them refinance, when, as BAIN and his coconspirators then well knew, they never intended to and never did provide such services and instead stole the money paid by the victims, leaving those victims further in debt and further behind on their mortgages. Over the course of their scheme, which spanned from in or about 2012 to in or about 2013, BAIN and his coconspirators defrauded hundreds of victims of more than $550,000.00.

### Relevant Persons and Entities

2.      At all times relevant to the conspiracy, BAIN was a resident of California. BAIN used several aliases when he dealt with the victims, including "Kevin Wright" and "Daniel White."

3.   BAIN and his co-conspirators used the following companies to falsely offer to help the victims obtain modifications to their mortgages under the guise of the federal Home Affordable Modification Program ("H.A.M.P."):

    a.   U.S. CERTIFIED was a company created sometime prior to the summer of 2012 and had no physical location, but had a telephone line at the UNITED PLUS offices;

    b.   UNITED PLUS was a company created in the summer of 2012, and maintained offices at 18062 Irvine Boulevard, Suites 303 and 304, Tustin, California. A telephone line in the name of U.S. Certified was maintained at the UNITED PLUS offices;

    c.   SHORT REFI FUNDING ("SHORT REFI") was a company created in or about February 2012;

(collectively referred to as the "SUBJECT COMPANIES"). BAIN held various roles at the SUBJECT COMPANIES, including, but not limited to, overseeing operations, handling marketing, and speaking with victims to convince them to send money.

## Count One

### [Conspiracy To Commit Wire Fraud]

4.   Paragraphs One through Three are hereby realleged and incorporated by reference as if fully set forth herein.

5.   From in or about 2012 through in or about 2013, in the Northern District of New York, and elsewhere, defendant BAIN conspired with others to commit wire fraud (18 U.S.C. § 1343) by devising and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent representations and promises by causing victims to pay money for help refinancing their mortgages when, as BAIN and his co-

2

conspirators then well knew, they did not intend to and never did provide such services and instead stole the money paid by the homeowners, and for the purpose of executing such scheme and artifice and attempting so to do, transmitting and causing to be transmitted by means of wire communication in interstate commerce writings and signs, in violation of Title 18, United States Code, Section 1343.

### Purpose

6.    A purpose of the conspiracy was to mislead victims and to steal their money, by lulling them into thinking that those payments could be used to obtain more favorable home mortgage loan terms.

### Manner and Means

7.    BAIN and his co-conspirators identified leads for victims in two ways.  First, BAIN and his co-conspirators obtained from marketing companies contact information for borrowers having trouble paying their mortgage.  Second, BAIN and his co-conspirators created and maintained websites for certain of the SUBJECT COMPANIES soliciting borrowers who were having trouble paying their mortgage.

8.    At BAIN's and his co-conspirators' direction, the SUBJECT COMPANIES hired employees to serve as telemarketers, and those telemarketers used the leads to contact the victims.

9.    BAIN and his co-conspirators prepared scripts to be used by the telemarketers, which falsely stated that the homeowners (a) could refinance their current mortgage with a 40-year mortgage at a very low fixed interest rate of 2 to 2.4%; (b) lower the principal balance of the existing mortgage; and (c) obtain a 90-day grace period by filing the modification request.

10.   When victims expressed an interest to the telemarketers, the telemarketers referred them to co-conspirators who served as "closers."  BAIN was one of the closers.  The

3

closers, who used aliases when they communicated with the homeowners, finalized payment terms with the homeowners.

11.    BAIN typically required homeowners to pay a $895 "fee"; and for victims who paid the fee, BAIN normally demanded more payments – often totally thousands of dollars – to cover additional expenses associated with appraisals or other activity that was necessary to complete the non-existent loan modification.  BAIN also directed the victims to complete paperwork to assist in the non-existent modification process and told some victims to stop making payments on their current mortgage and not to communicate with their current lender under any circumstances.

12.    In reality, BAIN lied to the homeowners.  BAIN and his co-conspirators did not provide the assistance they promised with respect to the mortgage modification services.  The additional fees that BAIN demanded from victims were for services that were unnecessary and never performed.  BAIN also frequently lied to victims about the progress of their loan modification applications.  He provided false assurances, both in emails and telephone calls, to victims in order to lull them into making additional payments and not complaining to authorities.

13.    As a closer, BAIN used email and telephones to instruct homeowners how to send money:  (a) by making cash deposits to specific bank accounts, often in the names of the SUBJECT COMPANIES, at banks including Bank of America, JP Morgan Chase, and Citibank and (b) sending wires by Western Union/Money Gram to specific people.  At least one of those accounts was in the name of SHORT REFI at a branch office of JP Morgan Chase in Clifton Park, New York in the Northern District of New York.  As instructed, several homeowners made deposits into those accounts, and BAIN and his co-conspirators then caused that money to be

sent by wire transfer to California banks where BAIN and his co-conspirators could access the money.

14.     During the period from 2012 to 2013, BAIN and his co-conspirators improperly obtained more than $550,000.00 from more than 500 victims.  Several of those victims resided in the Northern District of New York.

All in violation of Title 18, United States Code Section 1349.  That offense involved a plan, program, promotion and campaign that was conducted to induce the purchase of services by use of one or more interstate telephone calls initiated by a person conducting the plan, program, promotion and campaign, and by a prospective purchaser, and the plan, program, promotion and campaign victimized ten or more victims over the age of 55, in violation of Title 18, United States Code, Section 2326(2)(A).

### Forfeiture Allegation

15.     The allegations contained in Count 1 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

16.     Upon conviction of a conspiracy to violate Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1349, the defendant, SAMUEL BAIN shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.  The property to be forfeited includes, but is not limited to, the following:  A money judgment in the amount of $550,000.00 in U.S. Currency.

17.     If any of the property described above, as a result of any act or omission of the defendant:

5

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Dated: ~~Click here to enter a date~~.
June 25, 2016

RICHARD S. HARTUNIAN
United States Attorney

By:

Nicolas Commandeur
Assistant United States Attorney
Bar Roll No. 518984